

ENTERED
10/13/2016

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| HIGH STANDARD MANUFACTURING § | CASE NO: 15-33794 |
| COMPANY, INC.; fka HI STANDARD; fka § | |
| HIGH STANDARD; fka INTERARMS; fka § | |
| AMT § | |
|     Debtor(s) § | |
| § | CHAPTER 11 |

## MEMORANDUM OPINION

High Standard Manufacturing Co., Inc. filed for chapter 11 bankruptcy on July 17, 2015. (ECF No. 1 at 2). Alan Aronstein filed four proofs of claim in the case. High Standard objects to each of these claims, arguing Aronstein is not owed any amounts of money and thus his claims should be disallowed. The Court disallows Aronstein's proofs of claim (Claims #5, 17, 18, and 19).

### Jurisdiction

The district court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This case was referred to the bankruptcy court by order of the district court. *In re: Order of Reference to Bankruptcy Judges*, General Order 2012–6 (S.D. Tex. May 24, 2012). The allowance or disallowance of a proof of claim against the estate is a core matter as defined in 28 U.S.C. § 157(b)(2)(B). Accordingly, the Court has congressional authority to render a final order on High Standard's objections to Aronstein's proofs of claim.

Although subject-matter jurisdiction is proper in this Court, this Court may not issue a final order or judgment in matters within the exclusive authority of Article III courts. *Stern v. Marshall*, 564 U.S. 462, 502 (2011). This Court has constitutional authority to enter a final order on Aronstein's claims because they stem "from the bankruptcy itself or would necessarily be

resolved in the claims allowance process." *Id.* at 499. As a claim against High Standard's bankruptcy estate, Aronstein's claims directly stem from the bankruptcy, and the adjudication of High Standard's objections will necessarily resolve whether Aronstein's claims are allowed. *See, e.g.*, *In re Brown*, 521 B.R. 205, 213 (Bankr. S.D. Tex. 2014), *adopted*, No. CIV.A. H-14-2967, 2014 WL 7342435 (S.D. Tex. Dec. 23, 2014*), aff'd in part, appeal dismissed in part*, 807 F.3d 701 (5th Cir. 2015). Therefore, this Court possesses constitutional authority to enter a final order with respect to the allowance or disallowance of Aronstein's claims.

## Background

High Standard is a Texas company incorporated in 1993. Plaintiff's Exhibit No. 2 at 1, *In re High Standard Manufacturing Company, Inc.*, No. 15-33794 (Bankr. S.D. Tex. Aug. 26, 2016). High Standard operated as a firearms manufacturer and dealer. (ECF No. 153 at 170). Aronstein served as the initial director and incorporator of High Standard. Plaintiff's Exhibit No. 2, *supra*, at 3. At the organizational meeting of the Board of Directors of High Standard held on June 15, 1993, Aronstein, as the sole initial Director, elected himself as President of High Standard. Plaintiff's Exhibit No. 4 at 2, *In re High Standard Manufacturing Company, Inc.*, No. 15-33794 (Bankr. S.D. Tex. Aug. 26, 2016). High Standard's Board of Directors fired Aronstein in 2014 after Aronstein allegedly stole High Standard property and inventory, falsified High Standard's financial records, and destroyed other company documents. (ECF No. 153 at 14).

High Standard filed a voluntary Chapter 11 bankruptcy petition on July 16, 2015. (ECF No. 1). Aronstein filed four proofs of claim:

> (1) Claim #5 includes an unsecured claim of $1,458,000.00 for alleged unpaid wages authorized by a purported High Standard Board of Directors resolution dated July 13, 2012. Plaintiff's Exhibit No. 17 at 2, *In re High Standard Manufacturing Company, Inc.*, No. 15-33794 (Bankr. S.D. Tex. Aug. 26, 2016).

(2) Claim #17 asserts an unsecured claim of $65,000.00 for alleged credit card expenses paid personally by Aronstein on behalf of High Standard. Plaintiff's Exhibit No. 18 at 1, *In re High Standard Manufacturing Company, Inc.*, No. 15-33794 (Bankr. S.D. Tex. Aug. 26, 2016).

(3) Claim #18 asserts a claim of $39,000.00, $12,475.00 of that total being a priority claim, for unpaid salary of Aronstein earned from February to October 2014. Plaintiff's Exhibit No. 19 at 1, *In re High Standard Manufacturing Company, Inc.*, No. 15-33794 (Bankr. S.D. Tex. Aug. 26, 2016).

(4) Claim #19 asserts an unsecured claim of $7,800.00 for rental charges to store three machines in Unit B-3, which was used by Aronstein as office space after his termination from High Standard. Plaintiff's Exhibit No. 20 at 1, *In re High Standard Manufacturing Company, Inc.*, No. 15-33794 (Bankr. S.D. Tex. Aug. 26, 2016).

High Standard objects to the proofs of claim, arguing the following:

(1) Claim #5, alleging: its books and records do not reflect the amounts claimed nor notice of a board meeting for July 13, 2012; and that Aronstein was paid in full for his services to High Standard. (ECF No. 95 at 1–2).

(2) Claim #17, claiming: Aronstein provided no credit card statements or other proof of personal payments made by him on behalf of High Standard; High Standard's books and records do not reflect any amounts paid by Aronstein; and Aronstein was not authorized by High Standard to use personal credit cards for business expenses. (ECF No. 96 at 1–2).

(3) Claim #18, asserting: its books and records do not reflect any unpaid salary or wages to Aronstein; and the claimed wages occurred more than 180 days prior to High Standard's bankruptcy filing and thus cannot receive priority. (ECF No. 97 at 1–2).

(4) Claim #19, claiming: its books and records do not reflect the amounts claimed; no rental agreement existed between High Standard and Aronstein for the machines; and the machines belonged to High Standard but were moved and withheld by Aronstein within Unit B-3. (ECF No. 98 at 1–2).

## Analysis

A proof of claim is a written statement setting forth a creditor's claim. FED. R. BANKR. P.

3001(a). The filing of "a proof of claim is analogous to the commencement of an action within the bankruptcy proceeding." *In re Ira Haupt & Co.*, 253 F. Supp. 97, 98–99 (S.D.N.Y.), *modified sub nom. Henry Ansbacher & Co. v. Klebanow*, 362 F.2d 569 (2d Cir. 1966). "The filing of a proof of claim effectively commences a proceeding within the bankruptcy proceeding to establish its provability, priority, amount, etc." *Id.* A party that files a proof of claim in accordance with the Federal Rules of Bankruptcy Procedure is deemed to have established a prima facie case against the debtor's assets. FED. R. BANKR. P. 3001(f); *see also In re Fid. Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988).

A proof of claim must "be executed by the creditor or the creditor's authorized agent." FED. R. BANKR. P. 3001(b). A proof of claim that conforms substantially to the appropriate Official Form, and that is filed in accordance with Rule 3001, constitutes prima facie evidence of validity of the claim. FED. R. BANKR. P. 3001(f). Accordingly, a creditor's proof of claim is prima facie valid if the creditor completes all required portions of the Official Bankruptcy Proof of Claim Form (now labeled as Form 410, but labeled as Form 10 when the proofs of claim in this case were filed), attaches all supporting documents available for that claim, and meets the requirements of any applicable subparagraph of FED. R. BANKR. P. 3001. *See In re Harris*, 492 B.R. 225, 227–28 (Bankr. S.D. Tex. 2013) (discussing the required use of the Official Proof of Claim Form under Rule 3001, as well as the Form's requirements). Ultimately, a proof of claim must fulfill its "essential purpose of providing objecting parties with sufficient information to evaluate the nature of the claims." *In re Wyly*, 552 B.R. 338, 378 (Bankr. N.D. Tex. 2016).

Once a proof of claim is determined to have prima facie validity, the debtor may object to the claim to disprove its validity. To successfully object to a claim, a debtor must produce evidence rebutting the claim and establish that the claim should be disallowed pursuant to 11

U.S.C. § 502(b). *In re Fid. Holding Co., Ltd.*, 837 F.2d at 698; *In re Depugh*, 409 B.R. 125, 135 (Bankr. S.D. Tex. 2009). Rebuttal evidence must be equal in probative value to successfully rebut a creditor's proof of claim. *In re Wyly*, 552 B.R. at 379. "This can be done by the objecting party producing specific and detailed allegations that place the claim into dispute, by the presentation of legal arguments based upon the contents of the claim and its supporting documents, or by the presentation of pretrial pleadings, such as a motion for summary judgment, in which evidence is presented to bring the validity of the claim into question." *In re Fid. Holding Co., Ltd.*, 837 F.2d at 698.

If the objecting party produces evidence equal in probative force to the creditor's claim, or the claimant fails to prove its claim's prima facie validity, the claimant must present additional evidence to "prove the validity of the claim by a preponderance of the evidence." *Id.*; *see also In re DePugh*, 409 B.R. 84, 97–98 (Bankr. S.D. Tex. 2009) ("If, however, an unsecured creditor files a proof of claim that fails to comply with Bankruptcy Rule 3001, the Debtor has no evidentiary burden to overcome when lodging a claim objection pursuant to § 502(b), at which point the burden shifts back to the claimant to prove the underlying validity of its claim by a preponderance of the evidence in order to have its claim allowed."). The ultimate burden of proof always rests upon the claimant. *In re Fid. Holding Co., Ltd.*, 837 F.2d at 698.

***Claim #5***

Aronstein's Claim #5 asserts an unsecured claim of $1,458,000.00 for unpaid wages/salary allegedly approved by a High Standard Board of Directors resolution on July 13, 2012. Plaintiff's Exhibit No. 17, *supra*, at 1. Aronstein executed Claim #5 by filing an Official Form 10 with this Court on September 15, 2015. (ECF No. 95 at 1). Claim #5 conformed substantially to the appropriate Official Form and was filed in accordance with Rule 3001. The

Official Form 10 included alleged Board of Directors' meeting minutes acknowledging the back pay owed to Aronstein.  Plaintiff's Exhibit No. 17, *supra*, at 3.  Aronstein's claim met the requirements of all other relevant portions of the Official Form and subparagraphs of Rule 3001.  Because Claim #5 meets the necessary requirements, and provides High Standard with sufficient information to evaluate the claim, Aronstein met his burden of establishing a prima facie claim.

High Standard objects to Claim #5.  High Standard asserts that its books and records do not reflect the amounts claimed nor notice of a Board meeting on July 13, 2012.  (ECF No. 95 at 1–2).  High Standard also objects that Aronstein was paid in full for his services to the company.  (ECF No. 95 at 1–2).  The Court finds High Standard's rebuttal evidence to be at least equal in probative value to that of Aronstein, as the evidence includes specific allegations that place the claim into dispute.  *In re Fid. Holding Co., Ltd.*, 837 F.2d at 698; *In re Wyly*, 552 B.R. at 379.  James Gray, a member of the Board, contradicted Aronstein's claim that a valid Board meeting took place on July 13, 2012.  Instead, the testimony of High Standard's witnesses states that no decision was ever made by the Board to pay Aronstein $1,458,000.00.  (ECF No. 153 at 134).  Richard Fuqua, another member of the Board, argues that the July 13, 2012, meeting was not a Board of Directors meeting at all because the alleged meeting did not conform to High Standard's bylaws or Texas law.  (ECF No. 153 at 184).  Consequently, High Standard's allegations place Aronstein's claim in dispute and thus puts the ultimate burden of proof upon Aronstein to show that his proof of claim is valid.  *In re Fid. Holding Co., Ltd.*, 837 F.2d at 698 ("The ultimate burden of proof always rests upon the claimant.").

Aronstein failed to prove the validity of Claim #5 by a preponderance of the evidence.  Under High Standard's bylaws, any transaction between the corporation and any of its directors may be valid notwithstanding participation of the director at the meeting; however, the director's

interest must be known or disclosed to the Board of Directors and ratified by a majority of the directors. Plaintiff's Exhibit No. 19 at 5–6, *In re High Standard Manufacturing Company, Inc.*, No. 15-33794 (Bankr. S.D. Tex. Aug. 26, 2016). The interested director may be counted in determining whether a quorum is present at a meeting, but may not be included in calculating the majority needed to ratify a vote. *Id.* Any action that may be taken at a Board of Directors meeting may also be taken without a meeting if written consent is given by all of the directors entitled to vote. *Id.* at 6. High Standard's bylaws mirror the requirements within the Texas Business Organizations Code for interested director transactions. *See* TEX. BUS. ORGS. CODE § 21.418 (2011) (replacing TEX. BUS. CORP. ACT art. 2.35–1 (2002)).

Aronstein did not provide any additional support to meet his burden to show that the July 13, 2012, gathering was actually a Board of Directors meeting. Even assuming this meeting was one of the Board of Directors, under paragraph 3.11 of High Standard's bylaws (and TEX. BUS. ORGS. CODE § 21.418) the presence of a majority of the number of directors fixed by the bylaws constitutes a quorum for the transaction of business. Plaintiff's Exhibit No. 5, *supra*, at 5. No quorum of the directors existed at the July 13, 2012, meeting, disallowing any board approval of Aronstein's claim of back pay at the meeting. (ECF No. 153 at 51). Additionally, Aronstein presents no evidence that the directors unanimously consented in writing to Aronstein's back pay. (ECF No. 153 at 51). Because Aronstein failed to meet the requirements of both High Standard's bylaws and Texas state law for an interested director transaction, the Court finds Aronstein failed to meet his burden to show by a preponderance of the evidence that his claim was valid. Accordingly, Claim #5 is denied.

*Claim #17*

Aronstein's Claim #17 asserts an unsecured claim of $65,000.00 for alleged credit card

expenses paid personally by Aronstein on behalf of High Standard. Plaintiff's Exhibit No. 18, *supra*, at 1. Aronstein executed Claim #17 by filing an Official Form 10 with this Court on November 18, 2015. *Id*. However, Aronstein attached no supporting documents, even those in his sole possession such as his credit card statements, to support his claim. (ECF No. 153 at 177). Without such support, or an adequate explanation for not attaching such support available to him, Aronstein failed to substantially conform his claim to the appropriate Official Form and Rule 3001. Accordingly, Aronstein failed to prove Claim #17's prima facie validity.

Aronstein additionally failed to prove the validity of the claim by a preponderance of the evidence. Aronstein's claim is no more than a bare allegation that High Standard owes Aronstein money based on "credit card expenses." Other than this personal testimony, Aronstein provides no support for his claim for reimbursement of credit card charges on behalf of High Standard, such as his credit card statements to which only he has access. (ECF No. 153 at 177, 187). Because High Standard provides conflicting and more persuasive testimony denying Aronstein's proof of claim, Aronstein failed to prove by a preponderance of the evidence that his proof of claim is valid. (ECF No. 153 at 177); *see also In re Bryen*, 433 B.R. 503, 521 (Bankr. E.D. Pa. 2010) ("[A] court is not required to accept self-serving testimony, even if uncontradicted, if it finds the testimony improbable, unreasonable or questionable."). This lack of support, as well as the absence of an adequate explanation of why Aronstein did not offer such support, also undermines Aronstein's testimony in favor of his claim. *See Gumbs v. Int'l Harvester, Inc.,* 718 F.2d 88, 96 (3d Cir. 1983) (a party's unexplained failure or refusal to produce evidence that would tend to throw light on issues authorizes inference that such evidence would be unfavorable to that party). Because the credit card statements at issue were

statements on Aronstein's personal credit card, the Court does not understand why the statements were not introduced at the hearing.  Accordingly, the Court denies Claim #17.

***Claim #18***

Aronstein's Claim #18 alleges a claim of $39,000.00, $12,475.00 of that total being a priority claim, for unpaid salary earned by Aronstein from February to October 2014.  Plaintiff's Exhibit No. 19, *supra*, at 1.  Aronstein executed Claim #19 by filing an Official Form 10 with this Court on November 18, 2015.  *Id*.  Aronstein established a prima facie case against the debtor under Claim #18.  Claim #18 conformed substantially to the appropriate Official Form and was filed in accordance with Rule 3001.  Because Claim #19 meets the necessary requirements, and provides High Standard with sufficient information to evaluate the claim, Aronstein met his burden of establishing a prima facie claim.

High Standard objects to Claim #18.  Specifically, High Standard claims that its books and records do not reflect any unpaid salary or wages to Aronstein, and that the claimed wages occurred more than 180 days prior to High Standard's bankruptcy filing and thus cannot receive priority. (ECF No. 97 at 1–2).  The Court finds High Standard's rebuttal evidence to be at least equal in probative value to that of Aronstein, as the evidence includes specific and detailed allegations that place the claim in dispute.  *In re Fid. Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988); *In re Wyly*, 552 B.R. 338, 379 (Bankr. N.D. Tex. 2016).  High Standard's rebuttal specifically contradicts Aronstein's claim that he is due $39,000 in unpaid salary.  Consequently, High Standard's allegations place Aronstein's claim in dispute and thus transfer the ultimate burden of proof to Aronstein to show that his proof of claim is valid.  *In re Fid. Holding Co., Ltd.*, 837 F.2d at 698 ("The ultimate burden of proof always rests upon the claimant.").

Aronstein failed to prove the validity of Claim #18 by a preponderance of the evidence. Claim #18 is no more than a bare allegation that High Standard owes Aronstein money. Other than this personal testimony, Aronstein provides no evidentiary support for his unpaid salary claim. (ECF No. 153 at 177, 187). In contrast, High Standard provided testimony that the Board of Directors never resolved to pay Aronstein monthly salary payments from February to October 2014 nor agreed to pay Aronstein a severance, similar to Aronstein's Claim #5. (ECF No. 153 at 145–46). Additionally, High Standard's books and records do not reflect any unpaid salary or wages. (ECF No. 97 at 1). Finally, High Standard argues that the portion of the $39,000 asserted as a priority claim cannot receive such priority because this salary would have been earned more than 180 days before High Standard's bankruptcy petition was filed; consequently, Aronstein's priority claim would not be governed by 11 U.S.C. § 507(a)(4). Because High Standard provides this conflicting persuasive testimony denying Aronstein's proof of claim, Aronstein failed to prove by a preponderance of the evidence that his proof of claim is valid. Accordingly, the Court denies Claim #18.

***Claim #19***

Aronstein's Claim #19 asserts an unsecured claim of $7,800.00 for rental charges to store three High Standard machines in Unit B-3, an office space used by Aronstein after his termination from High Standard. Plaintiff's Exhibit No. 20, *supra*, at 1. Aronstein executed Claim #19 by filing an Official Form 10 with this Court on November 18, 2015. *Id.* Aronstein established a prima facie case against the debtor's assets under Claim #19. Claim #19 conformed substantially to the appropriate Official Form and was filed in accordance with Rule 3001. Although Aronstein's Official Form 10 failed to attach any supporting documents, Aronstein provided an adequate explanation for this failure—that the debtor unlawfully withheld

such documents from Aronstein. Plaintiff's Exhibit No. 20, *supra*. Aronstein met the requirements of all other relevant portions of the Official Form and subparagraphs of Rule 3001. Because Claim #19 meets the necessary requirements, and provides High Standard with sufficient information to evaluate the claim, Aronstein met his burden of establishing a prima facie claim.

High Standard objects to Claim #19. Specifically, High Standard claims that its books and records do not reflect the amounts claimed by Aronstein, that no rental agreement existed between High Standard and Aronstein for the machines in Unit B-3, and that the machines belonged to High Standard but were moved and withheld by Aronstein within Unit B-3 without High Standard's permission. (ECF No. 98 at 1–2). The Court finds High Standard's rebuttal evidence to be more probative than that of Aronstein, as the evidence includes specific and detailed allegations that place the claim into dispute. *In re Fid. Holding Co., Ltd.*, 837 F.2d at 698; *In re Wyly*, 552 B.R. at 379. High Standard's rebuttal specifically contradicts Aronstein's claims that a rental agreement was in place between him and High Standard, and that High Standard allowed Aronstein to take and store these machines. Consequently, High Standard's allegations place Aronstein's claim in dispute and thus transfer the ultimate burden of proof to Aronstein to show that his proof of claim is valid. *In re Fid. Holding Co., Ltd.*, 837 F.2d at 698 ("The ultimate burden of proof always rests upon the claimant.").

Aronstein failed to prove the validity of the claim by a preponderance of the evidence. Aronstein provided no additional evidence proving the validity of his claim by a preponderance of the evidence. Aronstein did not demonstrate his entitlement to rent for storage of the equipment; instead, the evidence presented just as likely demonstrates High Standard's version of the claim. Additionally, it is unproven by Aronstein's evidence that he had authority to use

Unit B-3 to store the equipment and conduct business. (ECF No. 153 at 16, 99, 101). Accordingly, Aronstein failed to meet his ultimate burden of proof as the claimant and Claim #19 is denied.

## Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **October 13, 2016.**

                                                    Marvin Isgur
                          UNITED STATES BANKRUPTCY JUDGE